**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JONATHAN D. BLECHER and ALAN P. BLECHER,**

**Plaintiffs,**

**v.**

**CHOICE HOTELS INTERNATIONAL, INC., and**

**POSH HOTEL OPERATIONS I LLC,**

**Defendants.**

**Case No.: 2:25-cv-04850-GJP**

# PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR SECOND OMNIBUS MOTION TO COMPEL

Defendants' response (Dkt. 83) is untimely. Judge Pappert's Policies and Procedures, § II.C.2, provides that "[t]he responding party may file a response within 5 days, also limited to 5 pages of double-spaced 12-point font." At the May 14, 2026 conference, the Court explained that this means five business days. The motion was filed July 16, 2026. The response was filed July 31, the eleventh business day after the motion. No motion for extension was filed and no leave was sought. Plaintiffs respectfully submit that the motion should be treated as unopposed. The response also exceeds the Court's five-page limit at six and a half pages of body text; Plaintiffs do not ask the Court to strike or decline to consider the response on that basis, but note it for the record.

Even if the Court considers the response on the merits, it fails for the following reasons.

**I. Defendants' Response Does Not Engage with Any of the Thirty-Two Specific RFA Deficiencies, Does Not Apply the Rule 37(e) Elements It Recites, and Does Not Use the Word "Agency" in a Case Where Agency Is a Central Issue**

The motion challenged three categories of discovery conduct: (1) thirty-two specific RFA responses employing the "document speaks for itself" formulation that this Court addressed at the May 14 conference and directed Defendants to cure; (2) outstanding interrogatory and document production obligations; and (3) an adverse inference under Rule 37(e)(2) based on the destruction of surveillance footage and the sworn-denial-then-disclosure sequence of June 22-25, 2026.

The response addresses none of these with specificity. It does not explain why any of the thirty-two challenged responses is sufficient, offering only a single example of the formulation (Dkt. 83 at 3) without applying any standard to justify it. It asserts compliance with the Federal and Pennsylvania Rules of Civil Procedure but does not explain how a response that redirects the

Court back to a document "fairly respond[s] to the substance of the matter" as Rule 36(a)(4) requires. It does not address the adverse inference request beyond citing this Court's April 2, 2026 finding (Dkt. 62), a finding that predated the conduct the motion challenges. It states the four threshold requirements of Rule 37(e) and then does not apply them. It does not explain the timeline: the sworn RFA denials of June 22, the Williams email of June 24 admitting the footage cannot be located, or defense counsel's statement on the June 25 conferral call that the second Broadband search came back empty "a couple weeks" before those sworn responses were served. It does not raise relevance with any specificity. And in a case where Plaintiffs have filed a Motion for Partial Summary Judgment on the issue of agency (Dkt. 81), the response does not use the word "agency" once.

Instead, the response offers generalities: that Defendants responded to "each and every one" of 288 requests, that discovery is "burdensome," and that the corporate structure limits available information. These are not answers to the motion.

**II. The "Document Speaks for Itself" Formulation Is Not an Admission, and Defendants' Example Proves It**

Defendants state that "Plaintiffs misrepresent the record" by characterizing the responses as employing the "document speaks for itself" formulation. (Dkt. 83 at 3.) This accusation is unfounded. Plaintiffs quoted Defendants' responses verbatim in the motion and attached them as exhibits.

Defendants' own example confirms the point. They quote their formulation: "To the extent that any language herein is taken from the Franchise Agreement, the Answering Defendant admits to whatever is written in the agreement which is a document that speaks for itself." (Dkt. 83 at 3.) Rule 36(a)(4) requires that a response "fairly respond to the substance of

the matter," and this formulation does not do so. It is a tautology: "if the document says X, I admit the document says X," which admits nothing independently, adds no information, and simply redirects the Court back to the document rather than responding to the substance of the request. It is the same formulation this Court addressed at the May 14 conference (Dkt. 76) and directed Defendants to cure. *See* Dkt. 68 at 4 (citing *Paramount Fin. Commc'ns v. Broadridge Investor Commc'n Sols.*, No. 15-405, slip op. at 5 (E.D. Pa. Feb. 7, 2017) ("[A] statement that the document speaks for itself is not an acceptable response.")). Defendants repeated it thirty-two times.

**III. Defendants Trivialize the Claims to Avoid Responding to Discovery That Goes to Agency, Fraud, and Treble Damages Under the UTPCPL**

Defendants characterize this as a case with "limited claimed damages." (Dkt. 83 at 1, 4.) It is a six-figure case, and the compensatory damages are only the starting point: the fraud claim (a fraudulent voicemail falsely reporting the vehicle was "found"), the UTPCPL claims (carrying statutory treble damages), and the agency issue (the subject of Plaintiffs' pending summary judgment motion) all extend well beyond the sum certain.

The discovery at issue involves the production of documents that are a login and a search away: franchise agreements, brand standards manuals, inspection reports, Medallia survey data, and hotel management agreements maintained in the ordinary course by entities whose business it is to maintain them. There is no meaningful discovery expense. The documents at issue are maintained in electronic systems: a credentialed user logs in, runs a search, and exports the results. That is the entirety of the burden Defendants describe.

Defendants further characterize Plaintiffs' discovery as "harassing" (Dkt. 83 at 4), a characterization that was not raised in any conferral, including the June 25 conferral call, the

conferral letter, or the follow-up emails of July 6 and July 9, and appears for the first time in this filing. On every conferral call in this case, counsel for Defendants has been professional and amicable, and Plaintiffs note with surprise that accusations of "harassment" and "misrepresentation" appear here for the first time.

Defendants also "suspect" that Plaintiffs' April 13 deficiency letter "was A.I. generated." (Dkt. 83 at 2.) This is mudslinging, and Plaintiffs will not dignify it beyond the following: both Plaintiffs are attorneys, nothing leaves Plaintiffs' desk without being written, read, and checked line by line, and if Defendants wish to challenge the quality of Plaintiffs' work product, they are welcome to do so on substance.

**IV. Defendants' Discovery Posture Confirms the Agency Relationship They Refuse to Address**

Defendants argue that "due to the corporate and business structures of both Answering Defendants, much of the information requested is simply not available to either Defendant," and that "the day-to-day management of the property has been subcontracted to a third-party vendor, including hiring, training, discipline and termination of employees, and maintenance of the property." (Dkt. 83 at 4.) But the Franchise Agreement required Choice's prior written approval of that management company (FA § 13.9), required the management company to comply with all of Choice's rules and regulations (id.), and required the general manager to be certified by Choice (FA § 7.2). The "limitation" Defendants describe is the control structure Plaintiffs' pending summary judgment motion addresses. That Defendants assert it without once using the word "agency" does not change the nature of the argument.

**V. The Court's April 2026 Spoliation Finding Predates the Sworn Denials That Are the Subject of This Motion, and Defendants' New Disclosures Confirm the Absence of Reasonable Preservation Steps**

Defendants rely on this Court's April 2, 2026 Memorandum (Dkt. 62), which found that "Nothing indicates Posh acted in bad faith." That finding was made on a different factual record, before the following events:

June 22, 2026: Both Defendants served sworn RFA responses denying that footage was not preserved.

June 24, 2026 (approximately 44 hours later): Defense counsel emailed Plaintiffs admitting that Broadband Hospitality "cannot locate" the footage.

June 25, 2026: On a conferral call, defense counsel stated that the second Broadband search came back empty "a couple weeks" before the sworn responses were served.

The motion's adverse inference argument is based on this sequence. Defendants' response does not address it. Their response states the four threshold requirements of Rule 37(e) and does not apply a single one. The response does, however, disclose new facts that support the motion. Defendants now reveal that Broadband "incorrectly entered the date of incident during the search" and that video results were "prematurely provided to Plaintiffs." (Dkt. 83 at 6.) An evidence search in active litigation that uses the wrong date is not a reasonable step to preserve.

Respectfully submitted,

*/s/ Jonathan Blecher, Esq.*

Jonathan Blecher, Esq.

411 Walnut St., #19810

Green Cove Springs, FL 32043

(561) 262-1948

Pro Se Plaintiff

Dated: August 3, 2026

**CERTIFICATE OF SERVICE**

I, Jonathan Blecher, Esq., hereby certify that on August 3, 2026, I caused a true and correct copy of the foregoing Plaintiffs' Reply in Further Support of Their Second Omnibus Motion to Compel to be served upon counsel for Defendants via the Court's EDS filing system, which will send notification to:

Marc B. Zingarini, Esquire

Carolyn A. Williams, Esquire

BBC Law, LLP

2005 Market Street, Suite 1940

Philadelphia, PA 19103

mzingarini@bbclawfirm.com

*/s/ Jonathan Blecher, Esq.*

Jonathan Blecher, Esq.